**WILLIAM VAN TUYL, PETITIONER-APPELLEE, v. FEDERAL SHIPBUILDING AND DRY DOCK COMPANY, RESPONDENT-APPELLANT.**

Hudson County Court
Law Division

Decided January 7, 1954.

On workmen's compensation appeal.

*Mr. Harold Krieger*, attorney for petitioner-appellee (*Mr. Aaron Gordon*, of counsel).

*Messrs. Stryker, Tams & Horner*, attorneys for respondent-appellant.

DREWEN, J. C. C. This is an appeal from a determination in the Bureau that respondent provide certain medical treatment for petitioner. The question submitted, strictly speaking, is one of novel impression. The main contention is that prior determinations are a legal bar to the aforementioned award. A chronological statement is therefore in order. It is undisputed that on July 29, 1942 petitioner was injured in an accident arising out of and in the course of his employment. Original petition was filed February 5, 1943, and by determination thereon made June 11, 1943 it was ordered that petitioner be compensated for 20 weeks' temporary disability and for permanent disability of 33-1/3% of total. It appears that on December 7, 1943, a second petition was filed seeking additional compensation for both temporary and permanent disability. Neither this petition nor a copy has been furnished the court, but respondent alleges that the second petition also asked for medical treatment. Hearing thereon was had December 10, 1945 and by determination of December 20, 1945 it was ordered that compensation be paid for permanent disability of 66-2/3% of total, with credit for payments previously made, and for temporary disability covering the period from July 28, 1943 to December 18, 1944.

In the determination on the second petition it is stated:

"Petitioner, William Van Tuyl, testified that in June of 1943 his condition became such that he was unable to work, he felt sort of paralyzed, he went to Hasbrouck Heights Hospital and subsequently in July, 1943 was operated on at the said hospital; that subsequently he was operated on by Dr. Weigle at the Muhlenberg Hospital and he was treated by Dr. Weigle until the 18th day of December, 1944."

Assuming, as respondent alleges, that medical treatment was sought in the petition of December 7, 1943, it would seem

that respondent provided it over a period extending well past the date petition was filed. The determination recites nothing at all about medical treatment having been sought in the petition. The statement is: "The petition in this cause was filed for additional compensation for both temporary and permanent disability." On April 10, 1950 a third petition was filed, alleging an increase in disability since December 20, 1945. On February 9, 1951, after hearing, the petition was dismissed for want of proof.

The present petition was filed March 31, 1952. Paragraph 42 reads:

"Petitioner has a wound in his back resulting from his accident of July 29, 1942, which opens up from time to time, discharging pus. From time to time petitioner collapses from pain. He collapsed September 9, 1951 and was advised by his doctor that he needs further medical treatment and perhaps an operation. Respondent has refused this request."

After hearing the matter the deputy director has determined that petitioner is entitled to the medical treatment sought, including surgery, and in specified alternatives has ordered respondent to provide accordingly.

Respondent's position upon the question of the effect to be given the prior determinations seems to be as follows: petitioner's present condition is viewed as one of long standing and continuously unchanged from and after the filing of the first petition. It should be noted that petitioner suffers from a draining sinus of the back; that the wound opens and closes periodically, as often as once a week; that petitioner states the pain is especially intense just before the wound opens, relief ensuing only after it opens and discharges. Respondent says that petitioner admits that the wound has been occasionally opening and closing ever since the time of the first operation. And respondent states further, "It is not claimed, nor does the testimony presented in the present case afford any basis for the contention, that the condition for which the petitioner now seeks treatment has developed since the last determination of the

Workmen's Compensation Division on February 9, 1953."
(Presumably February 9, 1951 is intended.) Petitioner
relates his having collapsed on two occasions, once prior to
the February 9, 1951 determination, again less than a year
thereafter. Respondent says that there has been no increase
in petitioner's permanent disability since the aforementioned
determination, and for present purposes this may be taken
as true. Respondent concludes:

"* * * petitioner can not relitigate the question of the need
for medical treatment since such condition existed at the time of
the litigation in the former actions between the same parties, and
there is a complete absence of proof that the condition has in any
way become worse since the last determination. * * * The
finality of the determination of the Workmen's Compensation
Division as to the conditions existing at the time of its entry
precludes the granting of relief predicated upon a physical con-
dition which existed at such time and which has not become
worse since that adjudication."

It is clear that in none of the three prior determinations
was the question of petitioner's right to medical treatment
considered. Similarly, respondent nowhere alleges that any
of the earlier petitions sought medical treatment for the
condition described in paragraph 42 of the present petition,
*supra*. In essence, then, the position taken is that if a peti-
tioner does not demand medical treatment prior to a determi-
nation, a respondent is no longer obliged to provide it, once
the determination has been rendered. Stated another way,
the argument is that a determination of temporary and
permanent disability legally includes a determination that
petitioner is not entitled to medical treatment, even though
the question of that right be not actually resolved in the
determination.

The prime weakness in respondent's contention is that the
statutory scheme clearly differentiates between the furnishing
of medical treatment and the paying of compensation for
temporary and permanent disability. Separate sections deal
separately with these matters. *R. S.* 34:15–12 contains the

schedule of payments for temporary and permanent disability, while *R. S.* 34:15–15 independently provides:

"The employer shall furnish to the injured workman such medical, surgical and other treatment, and hospital service as shall be necessary to cure and relieve the workman of the effects of the injury and to restore the functions of the injured member or organ where such restoration is possible * * *."

Notwithstanding the fact that the latter section imposes no limitation as to when such treatment shall be sought, respondent insists the workman must demand it prior to a determination of temporary and permanent disability. It argues that the legislation prescribes a scheme of benefits to the workman which are consecutive in character, particular reference being made to *R. S.* 34:15–16.' This section, however, explicitly excepts from such consecutiveness the provisions of *R. S.* 34:15–15.

Respondent, apparently referring to one or the other of the aforementioned sections, declares: "The effect of the foregoing provision of the Workmen's Compensation Act was considered by the former Supreme Court in *Sassarro v. Wright Aeronautical Corporation* (*Sup. Ct.* 1947), 135 *N. J. L.* 366." While the question in the cited case is somewhat like the present one, the former Supreme Court neither considered nor mentioned the effect to be given the provisions aforementioned. It can hardly be said, therefore, that the decision should rule their interpretation. *Compare Lazzio v. Primo Silk Co.*, 114 *N. J. L.* 450 (*Sup. Ct.* 1935), affirmed 115 *N. J. L.* 506 (*E. & A.* 1935). There the worker, after an award of permanent disability for a synovitic knee, attempted upon medical prescription to cure the knee by liniment rub and lamp treatment. The treatment caused erysipelas, resulting in death. Petition was filed on behalf of decedent's daughter, a mental incompetent. The Bureau dismissed the petition on the ground that "when the amount of permanent disability becomes fixed and agreed upon by the parties, the respondent's liability to compensate becomes fixed and anything which a petitioner may do after

the permanent disability becomes fixed cannot be binding upon the respondent, unless at that time further treatment is indicated." It was further found by the Bureau that "the chain of causation between the accident and the subsequent death was broken by the deceased herself after her permanent disability had been fixed and it was indicated that no further treatment would be of any avail * * *." The Common Pleas affirmed the dismissal on the ground, *inter alia,* that there was no causal connection between the development of erysipelas and the synovitis. The Supreme Court reversed. The significance of this case, for present purposes, lies in the fact that the knee condition that was treated after the determination of permanent disability was in existence at the time of the determination.

It should be noted that in the instant case there is no claim that the petition is barred by the statute of limitations or by laches, nor is there any contention that it is filed in bad faith.

█ It is my view that there is no authority for denying petitioner's right to the relief sought. More important, my opinion is that the provisions of *R. S.* 34:15–15 specifically entitle petitioner to it.

█ I find, after careful and independent consideration of the evidence, that petitioner has proven the need for the treatment sought. While undoubtedly every operation involves some risk, I am impressed by the testimony of Dr. Visconti, that surgical intervention may effect a complete cure of this grievously painful condition, as petitioner describes it.

█ It is urged for respondent that the deputy director's ordering the medical treatment in question is "clearly erroneous" because respondent's physicians are ordered to furnish treatment which they consider inadvisable. The contention lacks merit. If the employer refuses to furnish the treatment, the workman may take proper steps to secure it elsewhere. *R. S.* 34:15–15.

I find and conclude in all respects as did the deputy director.